## CONSUMERS' TOBACCO CO. v. AMERICAN TOBACCO CO.

### No. 5112.

Circuit Court of Appeals, Third Circuit.
July 20, 1933.

Rehearing Denied Oct. 18, 1933.

927

Edwin J. Prindle, of New York City (Jacob Basseches, of New York City, of counsel), for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and George E. Faithfull, both of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

We are of opinion this patent is not infringed. Whatever the process of Benjamin, the patentee, was, it was to be used for two purposes, first, the curing, and, second, the dehydration, of tobacco. The defendant buys from farmers cigarette tobacco which the latter has already cured and dehydrated. Its condition is such that it can be safely packed in hogsheads and kept for two or three years. If the farmer had not dehydrated the tobacco, it would not so keep. The process of Benjamin was not specially addressed to cigarette tobacco which had been already cured, colored, and dehydrated, but to tobacco generally which had not been cured and dehydrated, but which he meant to submit to such treatments. Benjamin's two processes of curing and dehydrating were such that, though arc lighting could be used, so also could incandescent electric lighting. Now, as we understand the operations of the defendant, their tobacco is used exclusively for cigarettes. The curing and dehydrating by the farmer is described in a pamphlet issued by the Department of Agriculture of the United States. It says: "During the first stage of curing, while the leaf is undergoing starvation, it is also losing the water which it contains, and one of the most important features of the curing is to properly regulate the rate of drying. * * * The full development of the yellow color marks the end of the first period of the curing. * * * As regards quantity, the most important change in the curing is the loss of water. The tobacco leaf ordinarily loses about 75 per cent of its green weight in curing and by far the greater portion of this loss is water. Thus the tobacco from an acre yielding 1800 pounds of cured leaf weighs when harvested something like 8 tons, including the stalks. Of these 8 tons fully 6 tons are water. To cure tobacco successfully this vast quantity of water must be removed under such conditions and at such a rate as will best allow the other important changes to take place." It was to a process to supplant such farmer operations Benjamin's patent was addressed, and in it he suggested the use of electric light, either incandescent or arc. The aim of Benjamin's process as specified in his patent was, "first, to remove the major portion of the normally contained moisture in the tobacco, and second, to develop the color and aromatic properties of the tobacco." Now these two things which had two or three years before been done by the farmer the defendant does not repeat. It takes the farmer's cured and dehydrated tobacco, and two or three years later, when it is aged, subjects it to another operation, the object of which is by heat and light treatments successively to lessen the deleterious effects of certain objectionable constituents and certain injurious elements, and in doing so defendant uses arc lights which develop ultra-violet rays. Whether it has that effect or no, we are not here concerned with. The simple fact is that in such operations defendant is not re-curing, or re-dehydrating, or repeating the work done by the farmer, and which was so satisfactorily done by him that the defendant bought his product. Whatever merit there is in this subsequent treatment by the defendant, Benjamin neither disclosed it in his specification nor embraced it in his claims. In Benjamin's process the use of electricity is at a heat of 220, 225 F. In defendant's process electric light is used at a temperature of 135 to 140.

By disclaimer claim 7 is restricted to arc light use. The patent was based on the suggestion that any kind of electric light could be used in its process. That was Benjamin's disclosure. Manifestly the disclaimer of incandescent light was not for the purpose of narrowing his patent, but of changing the claim so as to cover the defendant's process. It is an attempt to rewrite the patent so as to cover later advance in the art.

As the trial judge did not file an opinion, and, in consequence, has not shown the grounds for his decision, we affirm the decree on the reasoning of this opinion.